| 61    171 |
| 102   188 |

## HAWKINS *et al.*, executors, *vs.* TAYLOR *et al.*

[Warner, Chief Justice, was providentially prevented from presiding in this case ]

1. A mortgage given by a trustee to his *cestui que trust*, conditioned for the faithful execution of the trust, cannot be discharged by his paying the money to himself; and if not, it cannot be discharged by a purchaser of the property mortgaged, paying the money to the mortgagor himself.

2. If one of the *cestui que trusts* be a married woman of full age, and after the act of 1866, which made her a *feme sole* as to her separate estate, she assign her interest and that of her minor children in the mortgage, for value received by herself or an agent, the assignment is void as to the children, but good as to herself. Whether or not she received a consideration paid to herself or her husband as her agent, is to be determined from all the facts and circumstances of the case; and the transactions between her husband and herself, so far as third persons are concerned, should be closely scrutinized to uncover fraud, if any exist, and to discover the real truth of the case. If she really received no consideration, no valid title passed from her; if she did get part of the money paid, herself, or through her husband as her agent, the title from her did pass her interest.

Trusts. Mortgage. Husband and wife. Contracts. Before Judge RICE. Clarke Superior Court. February Term, 1878.

Reported in the opinion.

POPE BARROW; L. & H. COBB: ALEX. S. ERWIN, for plaintiffs in error, cited as follows: Payment to the trustee right, Hill on Trustees, 273, 407, 397-98; 1 Perry, 369; 56 *Ga.*, 598; 57 *Ib.*, 212; 59 *Ib.*, 718. Party paying not bound to see to application of fund, 5 Iredell's Eq. R., 357; 16 Vesey, Jr., 151; 1 *Kelly*, 324.

EMORY SPEER; JNO. C. REED, for defendants.

12

JACKSON, Justice.

Richard S. Taylor sold to William Bailey a house and lot in Athens. It was encumbered by the following mortgage:

"GEORGIA, CLARKE COUNTY. } This indenture made this twenty-third day of July, eighteen hundred and sixty-six, between Richard S. Taylor, of the one part, and Susan J. Taylor, his wife, and her children, born and to be born, of the other part, witnesseth: That whereas the said Richard S. Taylor, as trustee for his said wife and children, has in that capacity heretofore received from the executor of her late father, Edward Lampkin, deceased, the sum of six thousand and fifty dollars and ninety-four cents in gold, or funds equal in value to gold coin of that amount, for which sum he hereby acknowledges himself bound to his said wife and children as trustee under the provisions of the will of her late father aforesaid, by which the said money was bequeathed to the sole and separate use of the said Susan J. Taylor during her natural life, and at her death to her children. Now then, for the purpose of more effectually securing the said trust debt to the beneficiaries thereof as before stated, the said Richard S. Taylor doth hereby, in consideration of the premises and of the sum of five dollars to him in hand paid by the said Susan J. Taylor, the receipt whereof is hereby acknowledged, grant, bargain, sell, and by these presents, hath granted, bargained, and sold, and conveyed unto the said Susan J. Taylor, for her sole and separate use during her life, at her death to her children, born and to be born, the house and lot in.the town of Athens, in said county, now occupied by the said Richard S. Taylor as a residence, the lot containing six acres, more or less, lying on Prince Avenue, contiguous to Moss, Barnard and Colt, together with the furniture now in the house, to-wit: One set of parlor furniture consisting of 3 sets lace curtains, 6 chairs, 2 arm chairs, 2 *tete-a-tetes*, 1 center table, 1 velvet carpet and rug; 1 set of sitting room furniture, to-wit: 1 piano, 6 chairs, 2 arm chairs, 2 *tete-a-tetes*, 1 center table, 1 fine carpet and rug, 3 sets curtains; 1 set of dining-room furniture, to-wit: 1 side-board, 1 extension table, 1 dozen cane-bottom chairs, 1 set table china. To have and to hold the said described land and furniture to the sole and separate use of the said Susan J. Taylor for life, and at her death to her said children in *fee-simple.*

"Provided, that if the said Richard S. Taylor, or his heirs, executors, and administrators, shall, when lawfully called upon to do so, pay to the said Susan J. Taylor, for her life, for her sole and separate use, and at her death to her children, according to the trusts and limitations in the said will of Edward Lampkin, deceased, the said sum of six thousand and fifty dollars and ninety-four cents in gold coin, or an amount of

current funds equivalent in market value at the time to that sum in gold coin, and whatever other and further sums may be due by the said Richard S. Taylor, as trustee as aforesaid, then the mortgage deed to be void, else to remain in full force.

"In witness whereof, the said Richard S. Taylor hath hereunto set his hand and seal the day and year first above written.

The name "Susan J. Taylor" written in place of "Susan J. Lampkin" in two places before signing, thereby correcting a clerical error in the name.

"Signed, sealed and delivered in presence of          R. S. TAYLOR. [Seal.]"
  E. P. LUMPKIN,
  W. H. HULL, Not. Pub.          [Revenue Stamp, $6.50.]

"GEORGIA,
  CLARKE COUNTY. } Clerk's office Superior Court, 12th September, 1866. Recorded in book "R," folio 291 and 292.
           JOHN WALTER JOHNSON, Deputy Clerk."

"GEORGIA,
  CLARKE COUNTY. } Clerk's office Superior Court, 9th February, 1866. The transfer of the within mortgage to William Bailey recorded in book "R" folio 305.
           JOHN WALTER JOHNSON, Deputy Clerk."

General Bailey paid eight thousand dollars, the full value of the house and lot, to Richard S. Taylor, a sufficient amount of which was to go in extinguishment of, or payment to, this mortgage, and the same was to be assigned to him. And he took the following assignment thereof:

"GEORGIA,
  CLARKE COUNTY. } For value received I, Susan J. Taylor, for myself and my children, born and to be born, do hereby assign to Wm. Bailey, his heirs, executors, administrators and assigns, the within indenture of mortgage, together with all the interest, right or demand which I and they have therein, in and upon the house and lot, one oil hall-cloth, all the window shades, stair-rods and stair-carpets, cornice and bands, but not the other furniture and articles mentioned in the within; I also assign as before described all other papers relative to said mortgage of whatsoever kind upon which it is dependent.

"In witness whereof I have hereto set my hand and seal, this 30th day of January, 1867.

"Signed and sealed in presence of }      S. J. TAYLOR, [L. S.]"
    C. W. LONG. 

and took possession of the mortgage.

The dates show that this transpired in 1867. In 1874, Mrs. Susan J. Taylor, in her own right and in behalf of her

children, instituted proceedings to foreclose the mortgage above set forth, using a copy thereof from the record; and the complainants, executors of Bailey, brought their bill to enjoin the foreclosure of the mortgage, and to have the title fixed in the estate by decree as against the claim of the mortgagees. At the time of the purchase and the payment of the money to Taylor, he was trustee for his wife and children. The defendants answered the bill, denying that they had received any money for the mortgage, and set up the infancy of all the children of Taylor and wife, and prayed that the mortgage be foreclosed and the money raised out of the house and lot, and paid to their new trustee, Taylor having resigned, and Thomas having been ap pointed in his stead.

On the trial of the case the jury found for complainants, enjoining forever the foreclosure of the mortgage, and fixing the title to the premises in Bailey's estate.

The court granted a new trial, and the error assigned is that judgment.

Was the verdict right, and ought it to stand?

The case must turn, we think, upon the true construction of this mortgage, and the will to which it refers. There seems to be some doubt as to the true text of the will, from the statements of counsel, but as set out in the record the clause bearing upon the point is as follows:

"It is my will and desire that all the property given, bequeathed and devised to my five children in the foregoing testament, be held in trust for the sole and separate use of each of them, for and during the natural life of each of them, and under no circumstances to be liable to the payment of the debts of any of them, but to be used only for their support and maintenance of each of them, and their education and maintenance of the children of each of them, and after their death respectively, then to go to the children of each of them respectively, and in case of no child or children, then to the lawful heirs of such of my five children as may die childless."

The true construction of this mortgage, we think, is that it is a security given by Taylor to his wife and children to carry out his undertaking properly and legally, to adminis-

ter the trust he had undertaken, which was to use the fund for the support and maintenance of his wife for her life, and then at her death, to pay it over to their children. Could this agreement and security be discharged by the payment of the money to himself? We think not. It is true that Taylor, as trustee, is a different person from Taylor individually; but when Taylor individually executed a mortgage, not to Taylor as trustee, but to Mrs. Taylor and children, naming them, it would be a strained construction to say that he could discharge the mortgage by canceling it, or trading it and pocketing the proceeds. Such a construction of the instrument would utterly destroy the security. It would be no security at all so far as the mortgagor was concerned; for he could annul it, or render it valueless to the mortgagees, by trading it at any moment or canceling it and receipting himself.

And this appears to have been the view entertained at the time of this trade by the parties thereto; for General Bailey did not take an assignment of the mortgage from Taylor, but from his wife, one of the mortgagees. If Taylor, as trustee, owned the mortgage, had the legal title thereto, then the assignment should have been made by him.

What is the effect of the assignment by Mrs. Taylor? Certainly she could not convey the rights of her children. It does not appear that she was their guardian, nor their trustee, or competent in any other legal view of the case, to assign this mortgage so far as they were interested. But for herself, and her life estate, we cannot see why her title to the mortgage could not pass by her assignment thereof. She says over her own signature that, for value received, she assigned the mortgage. Certainly this is *prima facie* evidence that she received the money, or that her husband received it for her, and as her agent.

These transactions between husband and wife, where third persons are interested, should be scrutinized closely and probed to the quick by courts and juries, to ascertain the truth. Fraud is ever subtle and hard to unravel, espe-

cially if it be concocted between man and wife; and little circumstances may well be invoked to uncover it.

If, therefore, it should appear from the facts and circumstances of this case, taking in the entire transaction and the whole testimony, that Mrs. Taylor did receive a portion of this money, or that her husband, as her agent, did receive it for her, and in consideration thereof, for this *value received*, she did assign this mortgage to Bailey, we hold that she parted with the life-estate in this property, and that this mortgage cannot be foreclosed until her death; unless, indeed, from the deterioration of the property, or for some other reason, the rights of the remaindermen should be put in jeopardy; then it might be foreclosed and the property in remainder sold subject to the life-interest in Bailey's estate, if the finding should be that Mrs. Taylor, or her agent for her, got some of this money, enough to make a valid consideration to pass her title for life.

We think that the verdict is wrong in respect to the remaindermen, and whether right or wrong as regards Mrs. Taylor's life interest, will depend upon fraud or no fraud between Taylor and herself, and whether she got the consideration for her assignment, either herself, or through her husband as her agent.

Presuming that the court will exact good security from the trustee who shall receive the fund, should the mortgage be foreclosed in whole or in part, and which might well be fixed in the decree, we see no difficulty in the way of turning over the fund to such disinterested trustee to carry out the will.

Let the judgment granting the new trial be affirmed on the ground that the verdict is wrong in respect to the remaindermen, and let the case be fairly and fully investigated as respects Mrs. Taylor's assignment of her life-interest in the mortgage under the intimations and legal principles hereinbefore set out.

Judgment affirmed.