## DAME *et al. vs.* CHANDLER.

1. Although one may have gone into possession of land as a mere squatter, disclaiming title and not pretending to own it, but wanting to buy it, if he did buy it in good faith, thinking he was getting a good title, and thereafter claimed the land as his own, his possession under his deed was adverse; and if such possession, coupled with that of a vendee under him, continued for more than seven years, a jury would be authorized to find that the vendee under him had a prescriptive title; and a verdict so finding was not contrary to law.
2. This case differs from those of *Gay vs. Mitchell, ex'r*, 35 *Ga.* 139, and *Stamper vs. Griffin*, 20 *Id.* 312.

December 20, 1887.

Prescription. Title. Squatters. Possession. Before Judge MADDOX. Haralson superior court. July term, 1887.

Reported in the decision.

W. F. BROWN, for plaintiffs.

J. M. McBRIDE, for defendant.

BLANDFORD, Justice.

This was an action of ejectment brought in the superior court of Haralson county to recover lot of land 298 in the 8th district of originally Carroll, now Haralson county. The plaintiffs in the court below relied upon a grant to Dolly Heron, and a deed from Dolly Heron to George Dame, who was dead, and of whom the plaintiffs were the heirs at law. With this testimony the plaintiffs closed. The defendants relied upon a deed from John Stevely to A. McAlpin, conveying this land, and a deed from McAlpin to the defendant, Chandler. He also proved that McAlpin was in possession of the land under this deed from Stevely for three or four years, claiming it as his own property and adversely to everybody else, and that Chandler also had been in possession of it for several years; the possession of

McAlpin and Chandler together being for more than seven years prior to the commencement of this action. The plaintiffs replied that McAlpin was a squatter, and had disclaimed title; and that when he took the deed from Stevely, he could not change the character of his possession as a squatter to that of a person claiming the possession of the land adversely to the true owner.

The jury found a verdict in favor of the defendant as to seven-eighths of the property; as to one-eighth they found in favor of one of the plaintiffs. The plaintiffs moved for a new trial upon the ground that the verdict was contrary to law and without evidence to support it. There is no assignment of error as to the rulings, charges and decision of the court. The question here is, whether under the law the jury were authorized to find the verdict which they found.

Two cases were relied upon by the plaintiffs in error to sustain their view that McAlpin, having gone into possession of this lot of land as a squatter originally, could not afterwards purchase it except from the true owner, and claim possession of it under color of title so as to hold the land adversely to the true owner. The first case relied upon is the case of *Gay vs. Mitchell, ex'r.,* 35 *Ga.* 139; and that decision is founded upon the decision in *Stamper vs. Griffin,* 20 *Ga.* 312. In *Gay vs. Mitchell,* the person who was in possession of the land, and whose possession it was claimed was adverse to that of the true owner, derived his possession from one who was originally a squatter; a squatter put him in possession, and the person so in possession never himself had any written color of title, and never claimed it as his own but as the property of another person, and claimed to be the tenant of another person all the time. So also in the case of *Stamper vs. Griffin,* in 20 *Ga.* In that case, Stamper bought from Zettler, who was the true owner. The defendant in that case relied upon a sheriff's deed, which recited that the property had been sold under an execution against John Rush.

John Rush had bought the land from a man named Morris. Morris bought it from Zettler for $200, taking a bond for title from Zettler, which was assigned by Morris to Rush, Rush agreeing to pay Zettler the $200 which Morris owed. Rush found one Booty in possession. Booty had gone into possession as a mere squatter, never having claimed title, and never having had any written evidence of title; but he sold whatever claim he had to Rush and attorned to Rush as landlord. He was in possession, not claiming it as his own.

In both of these cases, the court held that the parties whose possession it was necessary for the defendants to rely upon, were not in adverse possession of the land, but were squatters and held the land in subordination to the true owners. But that is not the case here. In this case, McAlpin went into possession of the land as a mere squatter, disclaimed title and did not pretend to own it, wanted to buy it, and did buy it from Stevely, thinking he was getting a good title; bought it in good faith and paid the money, and thereafter claimed the land as his own. No such facts appeared in the cases above cited. So we think that this case is entirely different from the cases relied upon by the plaintiffs in error.

We think that this was a question for the jury; if they believed that when McAlpin bought the land from Stevely he bought it in good faith, and believed that he got a good title to it, and claimed the land thereafter as his own, his possession then being adverse, and if this possession, coupled with the possession of Chandler, to whom he sold, was for more than seven years (which is not denied), the jury were authorized to find a verdict for the defendant. We think, therefore, that the court did right in refusing to grant a new trial in this case.

Judgment affirmed.